CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ABRAHAM A. SIMMONS (CABN 146400)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7264
    FAX: (415) 436-7234
    Abraham.Simmons@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> v. <br> FRIDIS YOEL CRUZ-REYES, <br>     Defendant. | CASE NO. 3:24-CR-00381 JSC <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Court:     Hon. Jacqueline Scott Corley <br> Hearing Date:   June 11, 2025 <br> Hearing Time:   10:00 A.M. |

## INTRODUCTION

Defendant Fridis Yoel Cruz-Reyes was arrested on May 7, 2024, in the Tenderloin District of San Francisco with 4069.98 kilograms (converted drug weight) of drugs including over a kilogram of fentanyl as well as heroin, cocaine, and methamphetamine. This quantity of drugs is staggering for a street dealer, and particularly unconscionable because Cruz-Reyes was already on probation after having served a sentence for possessing with intent to distribute drugs in the Tenderloin and under a court order directing him to stay away from the Tenderloin.

At 25 years of age, Cruz-Reyes clearly had chosen to forge headlong into the drug trade in hopes of making money. His decision to earn a living by distributing poisons in a vulnerable San Francisco neighborhood that already has been struggling with a drug epidemic should be met with a stern rebuke.

UNITED STATES' SENTENCING MEMO     1
3:24-CR-00381 JSC

The United States seeks a custodial sentence of 60 months followed by three years of supervised release with the special conditions set out in the Plea Agreement submitted in this matter. This amount of time in custody would be relatively significant for a low-level Tenderloin drug dealer, but it is well-deserved in this case.

**OFFENSE CONDUCT**

On May 7, 2024, at approximately 10:41 p.m., San Francisco Police Department ("SFPD") officers were working in plain clothes and participating in a "buy/bust" operation. An undercover officer ("UC") contacted a male, later identified as Daurin Espinal, near Hyde Street and O'Farrell Street in San Francisco. The UC negotiated a deal with Espinal for $100 worth of fentanyl. Espinal informed the UC to follow him, and they met with the defendant, Fridis Yoel Cruz-Reyes. The UC observed Cruz-Reyes hand Espinal $100 worth of fentanyl, who then provided the UC with the suspected fentanyl. The UC provided Espinal with five twenty-dollar notes of U.S. currency. The UC gave his prearranged bust signal and left the area on foot. Arresting officers moved in and placed Espinal and Cruz-Reyes under arrest and took them both into custody. Officers seized $75 of U.S. currency from Espinal and the marked city funds that the UC provided to him.

Officers conducted a search of Cruz-Reyes and seized the following items: suspected fentanyl, suspected methamphetamine, suspected cocaine base (crack), suspected cocaine HCL, suspected fentanyl pills (blue M30's), three digital scales, U.S. currency and suspected marijuana. In total, officers seized $160 of U.S. currency from Cruz-Reyes. Later, a laboratory examination by the Alameda County Sheriff's Office confirmed the controlled substances and revealed the weights of the drugs which Cruz-Reyes admitted he was trying to distribute as follows: 1,195.2 grams gross of fentanyl; 78.3 grams gross of heroin; 490.1 grams gross of methamphetamine; and 117.4 grams gross of cocaine.

**PROCEDURAL HISTORY**

On July 10, 2024, a grand jury indicted Espinal and Cruz-Reyes. The indictment charged Espinal with one count of distribution of fentanyl and charged Cruz-Reyes with one count each of the following: (1) Possession with Intent to Distribute and Distribution of Fentanyl and Aiding and Abetting, in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; (2) Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (3) Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (4) Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). A forfeiture allegation was filed pursuant to 21 U.S.C. § 853(a).

On September 4, 2024, Espinal pleaded guilty to Count One (the only count under which he was charged) of the Indictment. On November 27, 2024, he was sentenced to 19 months custody and three years of supervised release.

On January 8, 2025, Cruz-Reyes pleaded guilty to Count One of the Indictment.

Sentencing is currently set for June 11, 2025, at 10:00 a.m., before the Honorable Jacqueline Scott Corley, United States District Judge.

**SENTENCING GUIDELINES CALCULATION**

The parties agreed to a plea agreement resulting in an adjusted offense level of 29. The calculation is as follows:

|   |   |   |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(c)(4): | 32 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 (*e.g.*, amount of loss, use of firearm) | -- |
| c. | Adjustments under U.S.S.G. Ch. 3 (*e.g.*, role in the offense) | -- |
| d. | Acceptance of Responsibility: | - 3 |
| e. | Zero Point Offender, U.S.S.G § 4C1.1 | - - |
| f. | Adjusted Offense Level: | 29 |

The government agrees with Probation's calculation of the criminal history category of II. PSR ¶ 29.

The applicable Sentencing Guidelines range for a Total Offense Level of 29 and Criminal History Category II is 97-121 months of incarceration

Despite this calculation, as detailed below, the government recommends a sentence of 60 months, near the low end of the range contemplated by a downward variance from the Adjusted Offense Level of

UNITED STATES' SENTENCING MEMO     3
3:24-CR-00381 JSC

29 to Level 24, which yields a guidelines range of 57-71 months.

## APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

These factors balance the various consideration in sentencing.

## RECOMMENDED SENTENCE AND SECTION 3553(A) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 60 months imprisonment, commensurate with a downward variance to Offense Level of 24 and a CHC II.

The nature and circumstances of the offense of conviction are serious. Cruz-Reyes provided

UNITED STATES' SENTENCING MEMO       4
3:24-CR-00381 JSC

fentanyl to his co-defendant for sale to an undercover officer. Cruz-Reyes has admitted that he (with the help of his co-defendant) intended to sell the drugs in his possession. The amount of drugs in his possession was large—amounting to 4069.98 kilograms (converted drug weight) of drugs including fentanyl, heroin, cocaine, and methamphetamine. Cruz-Reyes was selling the drugs while on probation from a previous drug offense and in violation of a court order directing him to stay away from the Tenderloin District. Thus, the vast majority of the two years defendant has spent in the United States since arriving from Honduras has been spent in jail—and he now faces a significant Guidelines range for the pending sentencing.

There are several aggravating factors that make it clear that defendant is a danger to the community. First, his behavior leading to the charges in this case demonstrated a defiance of previous court orders directing him to cease his criminal activity. When he was arrested in September 2023 (leading to his previous felony conviction), Cruz-Reyes had in his possession suspected fentanyl, suspected heroin, suspected cocaine and suspected Alprazolam, as well as the tools he needed to make street-level sales (including a digital scale and empty plastic baggies). His first conviction and sentence were insufficient to deter him: he sold the drugs at issue in this case after only three months and while still on probation from the prior offense. Importantly, he also chose to continue selling drugs in the same area where he previously had been arrested, which put him in violation of a stay-away order. Second, the volume of drugs Cruz-Reyes sought to distribute is enormous, establishing another aggravating factor. In Cruz-Reyes's possession at the time of his most recent arrest (which led to the current charges) was 1195.2 grams of fentanyl (2988 kilograms converted drug weight), 78.3 grams gross of heroin, 490.1 grams gross of methamphetamine, and 117.4 grams gross of cocaine. Third, Cruz-Reyes's operation demonstrates sufficient knowledge of the drug trade to pose a heightened danger to the community. In addition to the three digital scales, U.S. currency, and a large quantity of drugs that Cruz-Reyes had in his possession at the time of his arrest, he also was working with a co-defendant with whom he coordinated tasks to sell drugs in the Tenderloin.

These aggravating factors cannot be overlooked or easily explained away. Cruz-Reyes has admitted that he knew the substances he sought to sell were federally controlled substances. Absent a variance, the applicable Guidelines range for a person who engaged in this level of criminal conduct and

who, like defendant, already had a Criminal History within Category II, would be 97-121 months of incarceration.

Nevertheless, the United States recommends a downward variance of five offense levels—from Level 29 to Level 24—resulting in a Guidelines range of 57-71 months of incarceration. Such a variance is justified because he apparently does not occupy a position of responsibility within a drug trafficking organization; because he was not arrested with a deadly or dangerous weapon; and because his co-defendant—who was not found to be in possession of any of the drugs being distributed—received a sentence that included only 19 months of custody. At 26 years of age, defendant still is relatively young and maintains the possibility for change that such youth represents. He attended high school only until he was forced to leave to assist with family financial needs related to his father's health. Also, he has a child in Honduras for whom he provides some financial support and asserts he helps support his parents, as well.

The government's recommendation of 60 months takes these factors into consideration. A custodial sentence of 60 months imprisonment balances the aggravating and mitigating factors noted in the PSR. The government believes this sentence will provide the defendant an opportunity to reflect on the dangerous, potentially fatal consequences of his actions and protect the public from an individual who, at least until now, has proven he is willing to commit himself to a lifestyle that includes peddling dangerous and illegal narcotics. A custodial sentence of 60 months balances on the one hand accountability and deterrence, while, on the other hand, leaving room for the need for rehabilitation and the possibility for change while defendant still has time to change. This sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

The government acknowledges that Probation has recommended a custodial sentence of 42 months. This recommendation reflects an apparent further downward variance of another three or four Offense Levels than that agreed upon by the government. This recommendation, however, appears to rely principally on the desire to avoid sentencing disparities among "similarly situated defendants," i.e, Cruz-Reyes's co-defendant, Espinal. See PSR at Sentencing Recommendation, Page 2, ¶ 3. Nevertheless, it is the government's view that the record demonstrates Espinal's sentence reflects the absence of clear evidence that he knew about all the drugs Cruz-Reyes admittedly possessed and intended to distribute.

UNITED STATES' SENTENCING MEMO   6
3:24-CR-00381 JSC

Paragraph 66 of the PSR also makes clear that the more comparable group of defendants with whom Cruz-Reyes should be compared are defendants who received and average 79 and median 78 months of incarceration for their crimes. In light of the particular factors in this case, the government's recommendation of 60 months reflects a better balancing of the purposes of 18 U.S.C. § 3553, including the need to avoid sentencing disparities between similarly situated defendants.

The government also seeks forfeiture, pursuant to 21 U.S.C. § 853(a), of the proceeds defendant obtained, directly or indirectly, as a result of the criminal violations that are the subject of this action (here, approximately $235 in U.S. currency) and any property used, or intended to be used, to commit or to facilitate the commission of the violations (including the three digital scales in defendant's possession at the time of his arrest).

## CONCLUSION

Taking all these mitigating factors into account, a 5-level downward variance is justified and a sentence within the Guidelines range of 57-71 is appropriate. Based on the nature and circumstances of the offense, the defendant's criminal history, and the relevant 3553(a) factors, the government submits that a custodial sentence of 60 months imprisonment, followed by three years of supervised release with the special conditions set out in the Plea Agreement in this matter, is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a) while taking into account the aggravating and mitigating factors present in this matter.

DATED: June 4, 2025                                    Respectfully submitted,

                                                       CRAIG H. MISSAKIAN
                                                       United States Attorney


                                                          /s/ Abraham Simmons
                                                       ABRAHAM A. SIMMONS
                                                       Assistant United States Attorney